**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**STEVEN J. HALBERT**
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| KENNETH DAVIS, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A02-1306-CR-535 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt Eisgruber, Judge
The Honorable Steven Rubick, Magistrate
Cause No. 49G01-1302-FC-9734

**February 19, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Following a jury trial, Kenneth Davis was convicted of two counts of Battery,[1] one as a class C felony and another as a class A misdemeanor. Davis now appeals and presents the following restated issues for our review:

1. Did the trial court abuse its discretion in denying Davis's motion for a mistrial?

2. Did the trial court abuse its discretion in admitting certain testimony after the State committed an alleged discovery violation?

3. Do Davis's convictions violate Indiana's constitutional double-jeopardy protections?

We affirm in part, reverse in part, and remand with instructions.

On the evening of January 7, 2013, Davis and his pregnant girlfriend, B.P., got into an argument after Davis was several hours late in returning from work. During the argument, Davis grabbed B.P. by her arms, pushed her onto the bed, and wrested her phone out of her grasp. Davis then walked outside with B.P.'s phone, and B.P. followed him and told him to give her phone back. Davis refused, and the couple continued to argue until Davis punched B.P. in the face. B.P. then attempted to back away from Davis but slipped and fell on a patch of ice. Davis struck B.P. three more times with his fists, and he used her phone to make a call before throwing it on the ground and walking away. Shortly thereafter, someone in a car picked Davis up. After Davis left, B.P. called the police, and she was transported to the hospital by ambulance. While B.P. was being treated at the hospital, Davis called her and told her he hoped the baby died.

---

[1] Ind. Code Ann. § 35-42-2-1 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.).

As a result of these events, the State charged Davis as follows: Count I, battery as a class C felony; Count II, domestic battery as a class A misdemeanor; and Count III, battery as a class A misdemeanor. A jury trial was held on May 1, 2013, and Davis was convicted of Counts I and III, but acquitted of Count II. On May 28, 2013, Davis was sentenced to five years executed in the Department of Correction. Davis now appeals.

1.

Davis first argues that the trial court abused its discretion in denying his motion for a mistrial. "We review a trial court's decision to deny a mistrial for abuse of discretion because the trial court is in 'the best position to gauge the surrounding circumstances of an event and its impact on the jury.'" *Pittman v. State*, 885 N.E.2d 1246, 1255 (Ind. Ct. App. 2008) (quoting *McManus v. State*, 814 N.E.2d 253, 260 (Ind. 2004)). "A mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error." *Banks v. State*, 761 N.E.2d 403, 405 (Ind. 2002). To prevail on an appeal from the denial of a motion for a mistrial, a defendant must establish that the event or information precipitating the motion was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Burks v. State*, 838 N.E.2d 510 (Ind. Ct. App. 2005), *trans. denied*. We determine the gravity of the peril by considering the probable persuasive effect on the jury's decision. *Id.* Reversible error is seldom found where the trial court has admonished the jury to disregard the questioned statement. *Id.*

3

Additionally, as this court has noted, when a defendant is faced with a circumstance he believes might warrant a mistrial,

> [g]enerally, the correct procedure is to request an admonishment. *See Brown v. State*, 572 N.E.2d 496, 498 (Ind. 1991). However, if counsel is not satisfied with the admonishment or it is obvious that the admonishment will not be sufficient to cure the error, counsel may then move for a mistrial. *See Dresser v. State*, 454 N.E.2d 406, 407-08 (Ind. 1983). [A] failure to request an admonishment or move for a mistrial results in waiver of the issue. *See Robinson v. State*, 693 N.E.2d 548, 552 (Ind. 1998).

*Berkman v. State*, 976 N.E.2d 68, 74 (Ind. Ct. App. 2012) (quoting *Etienne v. State*, 716 N.E.2d 457, 461 (Ind. 1999)), *trans. denied*, *cert. denied*, 134 S. Ct. 155 (2013).

In this case, Davis requested a mistrial when, in violation of a motion in limine, B.P. made reference to Davis's prior incarceration. Specifically, when the State attempted to elicit testimony from B.P. concerning Davis's knowledge of her pregnancy as necessary to support the class C felony battery charge, the following exchange occurred:

> Q. Okay. Did you discuss the existence of your unborn child with him at any point?
> A. Yes.
> Q. When did you do that?
> A. I told him the day—he was the first person I called, matter of fact, the first day I found out and he knew—I sent him an ultrasound picture when he was locked up.

*Transcript* at 17. At that point, Davis objected and a bench conference was held outside the presence of the jury. During the conference, Davis argued, and the State conceded, that B.P.'s testimony was improper and violated the motion in limine. Davis asked the court to admonish the jury and moved for a mistrial. The trial court denied the motion for a mistrial,

but stated that it would admonish the jury. Thereafter, the jury was brought back in, but no admonishment appears in the record.[2]

The trial court agreed to give the admonishment as Davis requested, but appears to have forgotten to do so. Davis did not object or otherwise alert the court to its omission in this regard. Under these circumstances, we conclude that Davis has waived any claim of error relating to the trial court's failure to give the admonishment or declare a mistrial. "The overriding purpose of the requirement for a specific and timely objection is to alert the trial court so that it may avoid error or promptly minimize harm from an error that might otherwise require reversal, result in a miscarriage of justice, or waste time and resources." *Camm v. State*, 908 N.E.2d 215, 223 (Ind. 2009). In this case, when the trial court failed to give the admonishment, Davis stood idly by and allowed the error to occur, and now attempts to benefit from his failure to act. Indeed, at trial, Davis might have thought it wise not to remind the trial court to give the admonishment, as doing so could arguably compound the prejudicial effect of B.P.'s improper testimony by drawing attention to it. It is just this type of behavior that the waiver rule was designed to prevent.

Waiver notwithstanding, Davis has not established that B.P.'s testimony placed him in a position of grave peril. Any allusion to Davis's prior criminal history was undoubtedly improper, but the isolated statement in this case simply did not expose Davis to the degree of prejudice required to necessitate the extreme remedy of a mistrial. This is particularly true in

---

[2] We note, however, that certain parts of the trial were not transcribed. For example, the trial court's preliminary instructions and the opening statements of counsel were not transcribed. It is possible, then, that an admonishment was given upon the jury's return to courtroom, but simply not transcribed. Nevertheless, because no admonishment appears in the record, we will proceed as if none was given.

light of the amount and quality of the evidence against Davis. Not only did B.P. testify and give details of the battery, but the State presented numerous photographs depicting B.P.'s injuries, a nurse and a police officer testified to observing B.P.'s injuries, and B.P.'s medical records were admitted into evidence. Moreover, a detective testified that B.P. was obviously pregnant at the time of the incident. Under these facts and circumstances, we cannot conclude that B.P.'s single, fleeting reference to Davis previously being "locked up" placed him in a position of grave peril so as to necessitate a mistrial. *See Pittman v. State*, 885 N.E.2d 1246 (concluding that in light of the evidence presented against the defendant, a witness's testimony that the defendant had been in prison was highly unlikely to have had any significant effect on the jury so as to make a mistrial necessary).

2.

Next, Davis argues that a discovery violation by the State necessitated the exclusion of a portion of B.P.'s testimony. Trial courts are given wide discretion in dealing with discovery violations and may be reversed only for an abuse of that discretion involving clear error and resulting prejudice. *Ware v. State*, 859 N.E.2d 708 (Ind. Ct. App. 2007), *trans. denied.* Where a discovery violation has occurred, a continuance is the usual remedy; the exclusion of evidence is an extreme remedy to be used only if the State's actions were deliberate and prevented a fair trial. *Id.* Failure to request a continuance constitutes a waiver of any alleged discovery violation. *Sisson v. State*, 985 N.E.2d 1 (Ind. Ct. App. 2012), *trans. denied*.

Davis argues that the trial court abused its discretion by allowing B.P. to testify concerning statements Davis made to her over the phone while she was at the hospital, including the statement that he hoped the baby died. Specifically, Davis argues that under Marion County Local Rule 107, the State was required, and failed, to disclose those statements prior to trial. Assuming *arguendo* that the local rule required pretrial disclosure of the statements, Davis has not established reversible error. Because Davis did not request a continuance, he has waived appellate review of this issue. *Sisson v. State*, 985 N.E.2d 1. Waiver notwithstanding, Davis has not established prejudice sufficient to warrant reversal. The lack of prior notice of the statement did not hamper defense counsel's efforts to attack B.P.'s credibility, and Davis has made no effort to explain how his strategy would have differed had he received prior notice of the statements. In sum, the trial court did not abuse its discretion in admitting the complained-of testimony.

3.

Finally, Davis argues that his convictions violate Indiana's constitutional double jeopardy protections. The double jeopardy clause found in article 1, section 14 of the Indiana Constitution "was intended to prevent the state from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). Two or more offenses are the "same criminal transgression" for the purposes of the Indiana double jeopardy clause if, "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.*

7

Davis challenges his convictions under the actual-evidence test, which "prohibits multiple convictions if there is 'a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.'" *Davis v. State*, 770 N.E.2d 319, 323 (Ind. 2002) (quoting *Richardson*, 717 N.E.2d at 53). Before addressing the merits of this claim, we note that the State argues that Davis waived his double-jeopardy claim by failing to make a cogent argument. We agree that Davis's double-jeopardy argument is undeveloped, as he fails to direct our attention to the evidentiary facts he claims support his double-jeopardy analysis, focusing instead on the statutory elements of the crimes of which he was convicted. We note, however, that this court routinely corrects double-jeopardy violations *sua sponte* because such violations, if shown, implicate fundamental rights. *See, e.g., Scott v. State*, 855 N.E.2d 1068 (Ind. Ct. App. 2006). We therefore decline to dispose of Davis's double-jeopardy claim on the basis of waiver.

Turning now to the merits of Davis's double-jeopardy claim under the actual-evidence test, we note that in order to prevail on such a claim, the defendant must show that the evidentiary facts establishing the elements of one offense also establish all of the elements of a second offense. *Spivey v. State*, 761 N.E.2d 831 (Ind. 2002). Thus, under the actual-evidence test, Indiana's double-jeopardy clause "is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." *Id.* at 833. This test requires the reviewing court to "identify the essential elements of each of the challenged crimes and to

evaluate the evidence from the jury's perspective, considering where relevant the jury instructions, argument of counsel, and other factors that may have guided the jury's determination." *Id.* at 832. Under the actual-evidence test, a "reasonable possibility" that the jury relied on the same facts to reach two convictions "requires substantially more than a logical possibility." *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008). Instead, the existence of a reasonable possibility "turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." *Id.*

In order to convict Davis of Count III, battery as a class A misdemeanor, the State was required to prove that Davis knowingly or intentionally touched B.P. in a rude, insolent, or angry manner, and that the touching resulted in bodily injury to B.P. I.C. § 35-42-2-1(a)(1). To convict Davis of Count I, battery elevated to a class C felony, the State was required to prove all of the foregoing elements, plus the following two additional elements: That B.P. was pregnant and that Davis knew B.P. was pregnant. I.C. § 35-42-2-1(a)(8). The State argues that Davis's convictions pass scrutiny under the actual-evidence test because his convictions were predicated upon separate acts of battery. Specifically, the State notes that Davis struck B.P. multiple times, and that B.P. sustained multiple injuries as a result. The reasonable-possibility standard applicable to claims under the actual-evidence test "permits convictions for multiple offenses committed in a protracted criminal episode *when the case is prosecuted in a manner that insures that multiple guilty verdicts are not based on the same evidentiary facts.*" *Garrett v. State*, 992 N.E.2d 710, 720 (Ind. 2013) (quoting *Richardson v. State*, 717 N.E.2d at 53 n.46) (emphasis supplied). Based on our review of the record, we

cannot conclude that this case was presented to the jury in a manner that insures the guilty

verdicts were not based upon the same evidentiary facts.

Neither the charging information nor the jury instructions drew any distinctions

concerning which touching and which injuries were alleged to support each battery charge.

The charging information provides as follows:

> Count I:
> Kenneth Davis, on or about January 7, 2013, did knowingly or intentionally touch [B.P.] in a rude, insolent, or angry manner, that is: punched and/or slapped and/or struck her with hands and/or fists, which resulted in bodily injury, that is: bruising and/or laceration/s and/or swelling and/or pain, to [B.P.], and furthermore, [B.P.] was pregnant at the time she was battered, and Kenneth Davis knew that [B.P.] was pregnant; . . .
> Count III:
> Kenneth Davis, on or about January 7, 2013, did knowingly or intentionally touch [B.P.] in a rude, insolent, or angry manner, that is: punched and/or slapped and/or struck her with hands and/or fists, which resulted in bodily injury, that is: bruising and/or lacerations and/or swelling and/or pain to [B.P.]

*Appellant's Appendix* at 25-26. The jury instructions simply listed the elements of the

offenses, without referencing any specific evidentiary facts. Moreover, in its closing

argument, the State had the following to say about the evidence supporting each charge:

> [B.P.] has injuries on her face that are consistent with a slap. If you look at those photos—and you'll be able to again, you can see finger marks that have come out and the nurse testified bruising. The detective testified bruising and the officer testified redness. All of that is consistent with a battery. All of that is consistent with the defendant having—in a rude, insolent or angry manner having touched [B.P.] resulting in injury so that's battery. That's Count 3. For the domestic battery which is Count 2, we have to establish that the defendant is or was living as if a spouse of [B.P.] at some point. They did live together. They talked about marriage and the relationship was close enough that her daughter—her living daughter calls the defendant dad. That's a close relationship. That's got close ties. That's a domestic relationship. Add the battery to that, that's domestic battery. And then we come down to the C

felony battery which is the battery on the pregnant person as it shows in the instructions and there I want you to consider—because the only real issue—there's the battery—it happened. The real issue is whether the defendant knew and for that I'd ask you to take into consideration the fact that [B.P.] testified that she was the first person—he was the first person she called on October the 10th—the day she found out she was pregnant. She showed him papers related to the pregnancy. She showed him an ultrasound picture that she sent to him in the mail. She showed him pre-natal vitamins.

*Transcript* at 92-93. Thus, it appears the State invited the jury to rely upon the same touching and the same injuries to support both the class C felony and the class A misdemeanor battery charges. Under these facts and circumstances, we conclude that there is a reasonable possibility that the jury relied on the same evidentiary facts to support both convictions, and Davis's convictions therefore cannot withstand double-jeopardy analysis under the actual-evidence test. Accordingly, we reverse and remand with instructions to vacate Davis's class A misdemeanor battery conviction.

Judgment affirmed in part, reversed in part, and remanded with instructions.

KIRSCH, J., and BAILEY, J., concur.