Montrez **BERRY**, Appellant (Defendant Below),

v.

**STATE** of Indiana, Appellee (Plaintiff Below).

No. 49S00–9807–CR–392.

Supreme Court of Indiana.

Sept. 8, 1999.

Jodi Kathryn Rowe, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Montrez Berry was convicted of murder and attempted murder. He was found to be a habitual offender and sentenced to 145 years imprisonment. He contends in this direct appeal that the trial court erred in admitting: (1) DNA test results that the State failed to disclose pursuant to the trial court's automatic discovery rule, (2) evidence of an extrinsic offense under Indiana Evidence Rule 404(b), and (3) a 12–gauge Mussberg shotgun as demonstrative evidence. We affirm the judgment of the trial court.

### Factual and Procedural Background

On November 9, 1995, Andrea Russell went to Larry Bates' home in Indianapolis and was introduced to Berry. After an evening of marijuana and music punctuated by Berry's trips to a nearby store for liquor and later for condoms, Bates and Berry got into an argument and Berry left the house. Around 10:45 in the evening, Bates tele-

phoned Berry to bring more condoms. Shortly thereafter, Berry stopped by and once again left the house.

At approximately 12:30 a.m., there was a knock at the door, and simultaneously the phone rang. Bates let Berry into the house as he talked to his mother on the phone. After Bates hung up the phone, Berry pulled a shotgun from under his navy blue coat, shot Bates, and turned to shoot Russell. Russell was hit in the leg as she dived under a comforter. Berry then proceeded to ransack the house, frisk Bates' body, and shoot Bates twice more. Another errant shot was fired at Russell, who pretended to be dead when Berry lifted the comforter to inspect her. After taking money from Russell's purse, Berry left through the back door. Russell then dragged herself across the street where neighbors called for help. Bates died as a result of three shotgun wounds to the chest and abdomen. Russell suffered a serious leg injury, but survived and testified at trial.

The jury found Berry guilty of murder and attempted murder. The trial court sentenced him to sixty-five years for the murder charge, enhanced by thirty years for the habitual offender determination, and fifty years for the attempted murder charge, making his total sentence 145 years.

### I. Discovery Violation

■ The State performed two DNA tests on blood found on Berry's coat. Results of the first test were given to Berry's counsel on May 10, 1996, almost two years before trial. On the bottom of the two-page first test report, it stated that "[t]his stain is being analyzed using RFLP analysis and a separate report will be issued at a later date." The State performed a second test on October 8, 1996, that was not disclosed to Berry until the State's DNA expert, Dr. Tahir, approached Berry's counsel on the sec-

ond day of the four day trial. The State's failure to disclose the results of the second test violated the trial court's automatic discovery rule. See Rules of Organization and Procedure of the Marion Superior Court—Criminal Division Rule 8 (1995) (repealed 1996).[1] Berry contends the admission of the second test under these circumstances is reversible error.

■ The trial court has broad discretion in dealing with discovery violations and may be reversed only for an abuse of that discretion involving clear error and resulting prejudice. See Armstrong v. State, 499 N.E.2d 189, 191–92 (Ind.1986). Generally, the proper remedy for a discovery violation is a continuance. See Boyd v. State, 485 N.E.2d 126, 127–28 (Ind.1985). Exclusion of the evidence is an extreme remedy and is to be used only if the State's actions were deliberate and the conduct prevented a fair trial. See Taylor v. State, 676 N.E.2d 1044, 1046 (Ind.1997).

■ Although the failure to make timely disclosures of the results of the second DNA test was inappropriate, Berry points to nothing to show that the omission of the second test was a deliberate act on the part of the State. Berry was informed long before trial that the second test was being conducted. The trial court's remedy for the violation was a recess for the rest of the day after Dr. Tahir's direct testimony, to provide Berry an opportunity to talk to Dr. Tahir or to prepare additional cross examination. When the trial resumed the next day, Berry proceeded without asking for a continuance. Finally, Berry has not shown prejudice because although the substance of the two DNA tests was different,[2] the additional test did not appear to make a difference in Berry's trial strategy or tactics. There was no opening statement given with a contradictory theory of the case. Under these circumstances, the trial court's

---

1. Rule 8 of the Marion County Rules of Organization and Procedure for the Criminal Division requires "the State to disclose and furnish all relevant items and information under this Rule to the defendant(s) within thirty (30) days from the date of the initial hearing...." This rule now appears with minor changes as Rule 7 of the Marion County Rules of Organization and Procedure for the Criminal Division.

2. The PCR report of April 9, 1996 indicated that the blood on Berry's coat was consistent with Bates' blood and that the chance of a random blood sample match was 1 in 15 African–Americans. The RFLP testing also reflected blood that matched Bates', but the chances of a random match decreased to 1 in 1.8 million.

remedy did not constitute an abuse of discretion.

## II. Evidence of Prior Crime

▮▮▮ Berry contends that the trial court erred in admitting evidence of a robbery and shooting that occurred after the current crime. The State sought to admit the evidence pursuant to Indiana Evidence Rule 404(b), which allows the introduction of evidence of other crimes and wrongs for purposes other than proving propensity to commit the charged crime. The State contends that the evidence was admissible to show Berry's identity because of the similar nature or modus operandi of the crimes. To be admissible under Rule 404(b), the evidence must be relevant to some matter other than the defendant's propensity to commit crimes and the prejudicial effect of the evidence must not substantially outweigh its probative value pursuant to Indiana Evidence Rule 403. *See Thompson v. State*, 690 N.E.2d 224, 233 (Ind.1997). The justification for admission of evidence of another crime to prove the identity of the perpetrator is that the two crimes are so unique that they must have been committed by the same person. *See id.* at 233–35. Two generally similar crimes do not qualify under this exception. *See Brown v. State*, 577 N.E.2d 221, 226 (Ind.1991).

▮▮▮ The two crimes in question were not so unique as to qualify under the identity or modus operandi exception of Rule 404(b). In this case, Berry was charged with the shooting of an acquaintance. The State offered evidence of the robbery of a gas station and the shooting of a stranger.[3] The similarities to which the State points—that the perpetrator of each crime was using a shotgun and wearing a blue jacket—are not sufficiently distinctive to make evidence of the second crime admissible under Rule 404(b). There was no evidence that the same shotgun was used in both the crimes, and a navy blue jacket is simply too commonly found. Because the evidence of the second crime is not relevant to any matter besides Berry's propensity to commit crimes, it is not admissible under Rule 404(b).

▮▮▮ An error in admitting evidence "will be found harmless if its probable impact on the jury, in the light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." *Fleener v. State*, 656 N.E.2d 1140, 1142 (Ind. 1995); Ind. Trial Rule 61. In this case, the evidence concerning Berry's other crime did not contribute significantly to the conviction. Russell picked Berry out of a photo array and identified him at trial as the shooter. Russell was an eyewitness to the shooting and had spent several hours with Berry before the incident. Bates' blood was conclusively determined to be on Berry's jacket. Under these circumstances, the admission of the other crime was harmless error.

## III. Demonstrative Evidence

Berry also contends that the trial court committed reversible error by admitting as demonstrative evidence a 12–gauge Mussberg shotgun. "A trial court may properly admit evidence 'even where there is only a slight tendency to connect the defendant with the offense.'" *Malone v. State*, 700 N.E.2d 780, 782 (Ind.1998) (quoting *Sons v. State*, 502 N.E.2d 1331, 1332 (Ind.1987)). Berry admitted to having owned a 12–gauge Mussberg shotgun and the current offense was committed with a shotgun. Introduction of a shotgun as demonstrative evidence added very little to these relevant facts.

▮▮▮ However, the inquiry does not end there. Under Indiana Evidence Rule 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of . . . misleading the jury." In this case, while the probative value of the shotgun was low, its prejudicial effect was equally low. The trial court instructed the jury that the gun was not Berry's and "was to be considered . . . [as] an example to demonstrate what that type of gun looks like." The gun is of the general type that was involved in the shooting and the trial court gave an instruction on how the evidence was to be used. Therefore, the danger of prejudice from its admission does not substantially outweigh its probative value.

---

3. Berry was also charged with robbery in the instant case, but was found not guilty.

## Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and SELBY, JJ., concur.