**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**GILDA W. CAVINESS**
Caviness Law Office, LLC.
Rushville, Indiana

ATTORNEY FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

FILED
May 22 2013, 9:22 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TYLER E. BURTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 73A01-1205-CR-225 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE SHELBY SUPERIOR COURT
The Honorable Jack A. Tandy, Judge
Cause No. 73D01-1104-FB-3

**May 22, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

Tyler Burton ("Burton") appeals his convictions of possession of methamphetamine within 1,000 feet of school property, a Class B felony;[1] maintaining a common nuisance, a Class D felony;[2] and possession of paraphernalia, a Class A misdemeanor.[3]

We affirm.

## ISSUES

1.    Whether the trial erred in admitting jail recordings into evidence.

2.    Whether the enhancement of Burton's possession of methamphetamine conviction to a Class B felony was improper under the circumstances of the case.

3.    Whether the trial court erred in refusing to give Burton's proposed final instruction pertaining to the lesser included offense of possession of methamphetamine as a Class D felony.

4.    Whether the deputy prosecutor committed misconduct that put Burton in grave peril.

5.    Whether the State presented sufficient evidence to support Burton's convictions for possession of methamphetamine and possession of paraphernalia.

## FACTS AND PROCEDURAL HISTORY

---

[1] Ind. Code § 35-48-4-6.1(b)(2))B).

[2] I.C. § 35-48-4-13(b)(2).

[3] I.C. § 35-48-4-8.3(b).

On April 14, 2011, a Shelbyville Kroger pharmacy technician informed Shelby County Sheriff's Detective Darren Chandler ("Detective Chandler") that Burton and James Caldwell ("Caldwell") had just left Kroger after both purchased 2.4 grams of pseudoephedrine. The same technician had previously informed Detective Chandler that Burton had purchased or had been blocked from purchasing Sudafed on a number of prior occasions. Burton had been blocked from purchasing Sudafed on numerous occasions because he had already purchased the statutory monthly limit for purchases of the product.[4]

Detective Chandler drove to a Shelbyville Walgreens to see whether Burton was attempting to purchase more pseudoephedrine. In the Walgreens parking lot, Detective Chandler spotted the car that Burton was driving and followed Caldwell into the store. Caldwell walked toward the pharmacy area but left without making a purchase.

Detective Chandler again began following the car, which Burton drove to a Shelby County bowling alley. Burton entered the bowling alley and exited a short time later with a bag containing breadsticks.

Burton then drove to Shelbyville High School, where he pulled into the driveway, briefly stopped, and then pulled onto a local road. Detective Chandler, who had parked his unmarked car in a driveway down the road, again began to follow Burton. Burton then drove to an area containing several businesses, including Especially Kidz, a

---

[4] At the time, I.C. § 35-48-4-14.7(d) provided that a person may not purchase drugs containing more than "three and six-tenths (3.6) grams of ephedrine or pseudoephedrine, or both, on one (1) day, or more than nine (9) grams of ephedrine or pseudoephedrine, or both, in a thirty (30) day period." Effective July 1, 2011, the thirty-day limit was lowered to "seven and two-tenths (7.2) grams." *See* Ind. P.L. 221-2011.

treatment center for mentally handicapped kids and adults. There, Burton parked the car and began to "move around a lot" and lean toward the passenger side of the car. (Tr. 169). The car was not parked in a parking space.

Detective Chandler, who was dressed in a sweat shirt and jeans, approached the car, showed his badge to Burton, and asked if Burton would mind talking to him. Burton answered, "Sure, what's up?" (Tr. 171). Detective Chandler asked Burton to step out of the car, which Burton did. He then asked Burton if he had a driver's license, and Burton produced an Indiana identification card but no driver's license. Detective Chandler determined that both Burton's and Crawford's driver's licenses had been suspended.

Meanwhile, Burton's girlfriend came out of Especially Kidz, told Detective Chandler that the car Burton was driving belonged to her, took the breadsticks, and returned to the building. Caldwell then got out of the front passenger side of the car and attempted to follow Burton's girlfriend. Detective Chandler told Caldwell that he was not free to leave, and Caldwell walked back to the car and stood near the driver's side mirror. Immediately thereafter, Detective Chandler walked around to the passenger side of the car and found a plastic baggie or "bindle" containing white powder lying on the ground. (Tr. 173). The powder was later field tested, and it tested positive for methamphetamine.

Detective Chandler then handcuffed Burton and Caldwell. He found foil in Caldwell's possession which appeared to contain burnt residue of methamphetamine; however, the residue later tested negative for methamphetamine. Detective Chandler

4

advised Caldwell of his *Miranda* rights, and Caldwell told him that he had smoked methamphetamine that day.

Detective Mike Polston ("Detective Polston") arrived at the scene and had his drug-sniffing dog perform an exterior sniff of the car. The dog "indicated" that there was an odor of drugs in the spot where the foil was dropped outside the car. The dog also indicated the odor of drugs inside the car, including the car's front door on the driver's side. After the dog's indications, Detective Chandler obtained a search warrant for the car.

During the search of the car, officers found a blue zippered pouch in the driver's side door pocket. They opened the pouch and found a leather pouch containing digital scales and an empty baggie. The scales were sent to the Indiana State Police Lab, and the scales tested positive for methamphetamine.

Officers also found two hollow pen tubes containing powder residue in the car, one between the console and the passenger seat and one in the center console near the parking brake. One of the pen tubes was sent to the Indiana State Police Lab, and the powder tested positive for methamphetamine. Detective Chandler was unable to identify which pen tube was submitted for testing. Baggies were also found in the center console, and pseudoephedrine was found between the console and the driver's seat.

Officers looked under the passenger seat and found a silver pill container containing two "bindle" bags of white powder and one-half of a yellow pill. Detective Chandler submitted one of the bags and the yellow pill to the Indiana State Police Lab,

5

which tested the items. The powder in the baggie tested positive for methamphetamine and the pill tested positive for hydrocodone.

Both Burton and Chandler were arrested, and Burton was charged with possession of methamphetamine within 1000 feet of school property and/or a youth program center,[5] a Class B felony; possession of paraphernalia, a Class A misdemeanor; possession of a schedule I, II, or III controlled substance (the hydrocodone pill); and maintaining a common nuisance, a Class D felony. While he was waiting for the March 27-28, 2012 trial, Burton was held in the Shelby County Jail. On March 22, 2012, Burton made a phone call from the jail to his mother, in which he told his mother that the police were going to test the scales "I had" then quickly changed his statement to indicate they were scales belonging to Caldwell. (Tr. 208; Trial Exhibit 26). After hearing the recording of this phone call, Detective Chandler listened to previous recordings. Detective Chandler found an April 27, 2011 recording of a jail visitation conversation between Burton and his girlfriend in which Burton said that he had told Chandler to eat the baggie containing "the dope" and that he had taken a baggie contained a quarter gram of dope from his own pocket and "flipped it out." (Tr. 212).

At trial, the State used an aerial observation map to show that Burton was within 1,000 feet of school property and/or a youth program center during each of his stops.

---

[5] A "youth program center" is a building, structure, or property that "on a regular basis provides recreational, vocational, academic, social, or other programs or services for persons less than eighteen (18) years of age." I.C. § 35-31.5-2-357.

There is no evidentiary dispute that he was within 1,000 feet of one of these entities when he stopped his car near Extremely Kidz.

A jury found Burton guilty of possession of methamphetamine, possession of paraphernalia, and maintaining a common nuisance and not guilty of possession of a schedule I, II, or III controlled substance. The trial court sentenced Burton to an aggregate term of ten (10) years with six (6) years executed at the Indiana Department of Correction and four (4) years suspended to probation. Burton now appeals.

## DISCUSSION AND DECISION

We note that the State has not filed an appellee's brief. The obligation of controverting arguments presented by the appellant properly remains with the State. *Mateyko v. State*, 901 N.E.2d 554, 557 (Ind. Ct. App. 2009), *trans. denied*. Thus, when the appellee does not submit a brief, the appellant may prevail by making a prima facie case of error, i.e. an error at first sight or appearance. *Id*. We are nevertheless obligated to correctly apply the law to the facts of the record to determine whether reversal is required. *Id*.

1.    Admission of Jail Recordings

Burton contends that the trial court erred in denying his objection to references to the jail recordings and his subsequent objections to the admission of the recordings. Burton maintains that the State, which discovered the recordings on or about Friday, March 23, 2012, did not give him notice of the recordings until March 26, 2012, the day before trial. Burton argues that the State violated the trial court's discovery order.

The trial court "has broad discretion in dealing with discovery violations and may be reversed only for an abuse of that discretion involving clear error and resulting prejudice." *Berry v. State*, 715 N.E.2d 864, 866 (Ind. 1999). Generally, the proper remedy for a discovery violation is a continuance. *Id.* Exclusion of evidence is an extreme remedy and is to be used only if the State's actions were deliberate and the conduct prevented a fair trial. *Id.*

Here, the record does not indicate that the State engaged in deliberate acts designed to prevent a fair trial. In fact, the record reveals that the State discovered the recorded telephone conversations within a week of Burton's trial. In addition, Burton does not argue, and the record on appeal does not show, that Burton requested a continuance to review the recordings and to prepare a defense thereto. Under these facts and circumstances, we cannot say that the trial court abused its discretion in denying Burton's trial objections.

2.     Enhancement of Possession of Methamphetamine Conviction

Burton contends that his offense was improperly enhanced from a D felony to a B felony on the basis that he possessed methamphetamine within 1000 feet of school property and/or a youth program center. *See* I.C. § 35-48-4-6.1(b)(2)(B). He cites Indiana Code § 35-48-4-16(c), which states that it is a defense for a person charged with possessing methamphetamine within 1000 feet of school property or a youth program center that the person was there "at the request or suggestion of a law enforcement officer or an agent of a law enforcement officer."

8

Under the statute, the defendant has "'the burden of placing the issue in question where the State's evidence has not done so.'" *Harrison v. State*, 901 N.E.2d 635, 642 (Ind. 2008) (quoting *Adkins v. State*, 887 N.E.2d 934, 938 (Ind. 2008)), *trans. denied*.[6] Once the issue is in question, the State has the burden of rebutting the statutory defense. *Id*. Here, there is no evidence that Detective Burton requested or suggested that Burton stop his vehicle within 1000 feet of school property and/or a youth treatment center. Indeed, Detective Burton did not talk with Burton until after Burton had stopped his vehicle near Extremely Kidz.

Indiana Code § 35-48-4-16(c) does not provide a defense under the facts and circumstances of this case, and the State was not required to rebut a non-existent defense.

3.    Refusal of Proposed Instruction

Burton contends that the trial court abused its discretion in refusing a proposed instruction that described Class D felony possession of methamphetamine as a lesser included offense. Burton cites *Wright v. State*, 658 N.E.2d 563, 566-67 (Ind. 1995) for a three-part test regarding whether a trial court should have instructed a jury on a lesser-included offense of the offense charged. Under *Wright*, the trial court asks the following questions: (1) whether the lesser included offense is inherently included in the crime charged; if not (2) whether the lesser included offense is factually included in the crime

---

[6] In *Harrison*, the Court specifically addressed subsection (b) of the statute, which provides a defense when a defendant is "briefly" in, on, or within 1,000 feet of school property or a youth program center. We see no distinction between subsection (b) and (c) of the statute that would change the burden of proof.

9

charged; and, if either, (3) whether there is a serious evidentiary dispute whereby the jury could conclude that the lesser included offense was committed but not the greater. *Id*.

Here, the following colloquy occurred:

[Defense]:    We have one proposed jury instruction Your Honor.

The Court:    Okay.

[Defense]:    Giving him a copy.

[State]:    you gave me (inaudible)

The Court:    okay. And why do you want to give this one?

[Defense]:    It just is a lesser included. He's not charged with a D felony. I think that would be appropriate for them to decide that he could potentially be guilty of the D felony, possession of methamphetamine.

The Court:    Mm-hmm (affirmative). I guess my thought would be that's covered by Court five, where we explain that . . . the D felony can be enhanced to a B felony within 1000 feet.

[Defense]:    Okay.

The Court:    Okay. I'll refuse the Defendant's proposed instruction.

(Tr. 293).[7]

Although Burton has not graced us with a copy of his proposed instruction, it is clear that Court Final Instruction No. 5 defines the lesser-included offense of possession of methamphetamine as a Class D felony. The instruction states the following:

---

[7] Defense counsel acquiesced to Court Final Instruction No. 5's inclusion of the content of the proposed instruction. Accordingly, he has waived the issue on appeal. *See Shelby v. State*, 2013 WL 1755492 (Ind. Ct. App.). We will, however, consider the merits of the issue.

10

The defendant has been charged in Count 1 with possession of methamphetamine.

The crime of possession of methamphetamine is defined by statute as follows:

The offense is a Class B felony if the person in possession of the methamphetamine possesses less than three grams of pure or adulterated methamphetamine in, on, or within one thousand (1,000) feet of school property or a youth program center.

To convict the defendant, the State must have proved each of the following:

1. The Defendant;
2. knowingly and intentionally
3. possessed
4. methamphetamine, pure or adulterated

OR that he knowingly or intentionally aided, caused or induced James Caldwell to do the same.

If the State has not proved each of these elements beyond a reasonable doubt, you should find the defendant not guilty of possession of methamphetamine.

If the State has proved each of these elements beyond a reasonable doubt, you should find the defendant guilty of possession of methamphetamine, a Class D felony.

If the State has proved beyond a reasonable doubt that the offense occurred in, on, or within 1,000 feet of a youth program center or school property, you should find the defendant guilty of possession of methamphetamine, a Class B felony.

(App. 72). In final argument, counsel alluded to the possibility of a Class D conviction.

Furthermore, the jury verdict form allowed the jury to choose guilt or innocence of both offenses.

11

Clearly, the record indicates that the definition of Class D felony possession of methamphetamine was covered by Court Final Instruction No. 5 and that the jury had the opportunity to choose whether Burton was guilty of that felony instead of the Class B felony. The trial court did not abuse its discretion in refusing to give Burton's proposed instruction.

4.    Prosecutorial Misconduct

During rebuttal closing argument, the deputy prosecutor commented that Shelbyville is a town "where it's hard to go much of anywhere without being within 1,000 feet [of school property and/or a youth treatment center]." (Tr. 317). Burton objected on the basis that "there's no evidence regarding any of those." *Id.* An unrecorded side bar conference was held, and the trial court denied the objection.

Burton contends that the deputy prosecutor's statements constitute prosecutorial misconduct that placed him in a position of grave peril to which he should not have been subjected. (Burton's Br. 13). The trial court is in the best position to assess the circumstances of an error and its probable impact on the jury, so we review the denial of an objection thereto only for an abuse of discretion. *Lucio v. State*, 907 N.E.2d 1008, 1010 (Ind. 2009). Grave peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision. *Reynolds v. State*, 797 N.E.2d 864, 868 (Ind. Ct. App. 2003).

The State presented undisputed evidence that Burton possessed methamphetamine within 1,000 feet of Shelbyville High School and within just a few feet of a youth

program center (which itself was within 1000 feet of the high school). We see no possibility that the deputy prosecutor's statements put Burton in grave peril.

5.    Sufficiency of the Evidence

Burton contends that the State failed to present sufficient evidence to support his convictions of possession of methamphetamine and possession of paraphernalia. Indiana Code § 35-48-4-6.1 provides that "a person who, without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally possesses methamphetamine (pure or adulterated)" commits Class D felony possession of methamphetamine. The offense is a Class B felony if the person in possession of the methamphetamine possesses less than three (3) grams of pure or adulterated methamphetamine "in, on, or within one thousand (1,000) feet of: (i) school property; (ii) a public park; (iii) a family housing complex; or (iv) a youth program center . . . ." I.C. § 35-48-4-6.1(b)(2)(B). Indiana Code § 35-48-4-13(b)(2) provides that a person commits Class A misdemeanor possession of paraphernalia if the person knowingly or intentionally possesses a raw material, an instrument, a device, or other object "that the person intends to use for: (1) introducing into the person's body a controlled substance; (2) testing the strength, effectiveness, or purity of a controlled substance; or (3) enhancing the effect of a controlled substance . . . ."

The element of possession may be proved by actual or constructive possession, and constructive possession occurs when the defendant has the intent and capability to maintain dominion and control over the item. *Atwood v. State*, 905 N.E.2d 479, 484-85

13

(Ind. Ct. App. 2009), *trans. denied*. When possession of the premises is non-exclusive, the inference that a defendant had knowledge of the presence of the contraband and was capable of controlling it is not permitted absent additional circumstances indicating such knowledge and control. *Id*. Among the circumstances that will support such an inference are (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the contraband; (5) contraband in plain view; and/or (6) location of the defendant of the contraband in close proximity to items owned by the defendant. *Id*.

Here, the State presented a recording in which Burton admitted that he avoided discovery of methamphetamine located in his pocket when he "flipped" the methamphetamine. (Tr. 212). Police found scales covered with methamphetamine residue in the door pocket next to the front car seat in which Burton was sitting and an ink pen shell used for smoking methamphetamine in the car's console. The State also presented a recording in which Burton admitted that the scales were something he "had" before the search.

The State's evidence is sufficient to show that Burton actually possessed methamphetamine shortly before the search and that he avoided detection by evasive action. The State's evidence is also sufficient to show that Burton constructively possessed both methamphetamine and paraphernalia that was in close proximity to where he was sitting. Furthermore, the recordings are sufficient to allow the jury to infer that Burton knew of the presence of contraband in the car.

14

Affirmed.

ROBB, C.J., and MAY, J., concur.