**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 17 2014, 11:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JESSE R. POAG**
Newburgh, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| AARON M. FELLOWS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1305-CR-244 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable David D. Kiely, Judge
Cause No. 82C01-1111-FA-1386

**February 17, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Aaron M. Fellows ("Fellows") appeals his convictions, following a jury trial, for Class A felony burglary resulting in bodily injury[1] and Class B felony attempted robbery resulting in bodily injury.[2]

We affirm.

## ISSUES

1. Whether the trial court abused its discretion by admitting into evidence a police officer's testimony regarding Fellows's unsolicited statement made to the police officer during booking where the testimony was not disclosed until two days before trial.

2. Whether there is sufficient evidence to identify Fellows as the perpetrator of the burglary and attempted robbery.

## FACTS

Shortly before midnight on November 6, 2011, Heather Williams ("Williams") was returning home from work when Fellows and another man approached Williams outside her house and asked her if she had a lighter. Williams replied that she did not and then walked up to the screened-in front porch of her house. Fellows followed her and, while standing outside her porch, asked her if she had a lighter inside the house. After Williams stated that she did not, Fellows went onto the porch, got "in [Williams's] face," and hit her. (Tr. 40). Fellows pushed Williams through the glass of the front door and

---

[1] Ind. Code § 35-43-2-1.

[2] I.C. §§ 35-42-5-1; 35-41-5-1. Fellows was also convicted of Class D felony possession of a controlled substance and Class A misdemeanor resisting law enforcement, but he does not challenge these convictions on appeal.

knocked her into the front room of her house. The other man that was with Fellows did not enter Williams's porch or house. Williams's girlfriend, Dawn Linberg ("Linberg"), was already in the house, and Fellows hit and kicked Lingberg. Fellows alternated hitting Williams and Linberg and told them that he was going to "tak[e] all th[eir] shit" from their house. (Tr. 43). As Williams was on the floor, Fellows grabbed a cigarette pack containing $9.00 in cash from her pocket. Williams pleaded with Fellows to stop hitting her and to leave, but he continued to hit her. Meanwhile, Linberg jumped on Fellows's back in an attempt to stop him from hitting Williams.

Williams then ran out of the house toward her neighbor's house. Fellows pushed Linberg against the wall and chased after Williams. Fellows kicked Williams's leg, causing her to fall to the ground and rendering her unable to get up. Fellows laughed and said "look at you, look at you[.]" (Tr. 48). At this time, Linberg could be heard inside the house calling the police, and Fellows fled the scene. Linberg, who went outside to check on Williams, saw Fellows run toward Bedford Avenue.

Evansville Police Officer William Arbaugh ("Officer Arbaugh") responded within minutes to the dispatch of a residential burglary, which included a description of the suspect and information that the suspect had fled toward Bedford Avenue. Officer Nickolaus Henderson ("Officer Henderson") and his K-9 partner, Jerry ("the police dog"), also responded to the dispatch. The officers spoke to Linberg, who described Fellows and his clothing (a black male wearing a black coat and a blue shirt and blue cap), the last place he was seen, and the direction in which he fled.

3

The police dog tracked a scent and within minutes discovered Fellows, who was wearing clothing matching the description given by Linberg, about one block from Williams's house. Officer Henderson discovered Fellows "lying motionless" on the ground with his cap next to him. (Tr. 217). Officer Henderson noticed that Fellows appeared to be "on some kind of intoxicant" other than alcohol. (Tr. 230). Near Fellows's cap, the police later discovered a baggie of pills, which were later tested and determined to be Clonazepam, a controlled substance. Officer Henderson told Fellows to stay on the ground, but Fellows got up and started backing away from the officer. After Fellows refused to stop, despite being ordered to do so, Officer Henderson released the police dog to stop Fellows. The police dog bit Fellow's leg and held it in a "bite hold," and Fellows then fell to the ground. (Tr. 222).

Minutes after the police apprehended Fellows, a police officer walked Linberg down the alley to where the police had Fellows. Immediately upon seeing Fellows, Linberg "yelled out, that's him." (Tr. 154). Linberg also confirmed to the officer that she was "positive" about her identification of Fellows as her assailant. (Tr. 154). Thereafter, Williams was transported to the hospital and suffered a dislocated kneecap and bruising. Linberg suffered three bruised ribs and broken blood vessels around her eye.

After the police arrested Fellows, they took him to the hospital for treatment of the dog bite to his leg. While at the hospital, Fellows cursed at the officers, saying "F you" to them multiple times. (Tr. 184). Officers observed that Fellows had a white powdery substance around his lips, had an angry demeanor, and slurred his speech, and the officers

4

believed that Fellows was intoxicated. Due to Fellows's dog bite and intoxicated appearance, the police had to get medical clearance to take him to the jail.

Thereafter, Officer Arbaugh transported Fellows to the Vanderburg County Jail. When the police were booking Fellows into the jail, an officer asked Officer Arbaugh why Fellows was there. Officer Arbaugh replied that Fellows was there "for beating up a girl and [that] he [had] beat her up pretty bad." (Tr. 190). Fellows then interjected, "fuck you, fuck that bitch . . . I should of [sic] hurt her worse." (Tr. 190). Officer Arbaugh did not include this statement in his police report.

The State ultimately charged Fellows with: Count 1, Class A felony burglary resulting in bodily injury; Count 2, Class A felony robbery resulting in serious bodily injury; Count 3, Class B felony attempted robbery resulting in bodily injury; Count 4, Class D felony possession of a controlled substance; and Count 5, Class A misdemeanor resisting law enforcement.

Two days prior to trial, the State disclosed to Fellows's counsel that Officer Arbaugh was going to testify about the statement made by Fellows during booking. Fellows filed a motion in limine, seeking to exclude the officer's testimony regarding Fellows's statement because it had not been disclosed during discovery and claiming that Fellows denied making any statement about hurting the victim. Fellows did not request a continuance based on the alleged discovery violation.

The trial court held a two-day jury trial on April 10-11, 2013. Prior to the commencement of the trial, the trial court addressed Fellows's motion in limine. The trial court denied Fellows's motion but made no ruling whether the State's late disclosure

5

of the officer's proposed testimony constituted a discovery violation. The trial court did however, state that it would give Fellows's counsel the "opportunity to discuss what the statement may or may not have been with Officer Arbaugh prior to his testimony." (Tr. 3-4).

During opening statements, the prosecutor stated that the evidence would show that Fellows made a statement about hitting Williams when he was booked into the jail, and Fellows's counsel told the jury that Fellows's statement, which "conveniently came up two days before trial," did not amount to a confession. (Tr. 20). During trial, Fellows objected to Officer Arbaugh's testimony regarding Fellows's booking statement and asked the trial court to incorporate his previous argument, which was that evidence of Fellows's statement was inadmissible because it amounted to a discovery violation. The trial court overruled Fellows's objection. Fellows's counsel cross-examined Officer Arbaugh regarding Fellows's statement and the officer's failure to include the statement in his police report.

When Williams and Linberg testified, they both identified Fellows as the person that perpetrated the crimes against them. Williams affirmed that she was "sure" about her identification, (Tr. 44), and Linberg testified that she was "[p]ositive" about her identification of Fellows. (Tr. 99). Linberg also testified that she had identified Fellows just after he was arrested on the day of the crimes. Fellows cross-examined Williams and Linberg about the lighting conditions and their ability to identify Fellows, but he did not object to Linberg's pretrial identification or to Linberg's or Williams's in-court identifications.

6

After the State rested, Fellows moved for a directed verdict, arguing that the evidence was insufficient to show that Fellows was the perpetrator of the crimes. The trial court denied Fellows's motion. During closing argument, Fellows's counsel argued that the State had failed to present sufficient evidence of identity to convict Fellows, specifically challenging Linberg's and Williams's ability to accurately identify Fellows as well as challenging Officer Arbaugh's failure to disclose Fellows's booking statement during the seventeen months before trial.

The jury found Fellows guilty of Counts 1, 3, 4, and 5 and was unable to reach a verdict on Count 2. The trial court imposed a thirty (30) year sentence for Fellows's Class A felony burglary conviction, ten (10) years for his Class B felony attempted robbery conviction, eighteen (18) months for his Class D felony possession of a controlled substance conviction, and one (1) year for his Class A misdemeanor resisting law enforcement conviction. The trial court ordered that these sentences be served concurrently and executed in the Department of Correction. Fellows now appeals two of his convictions.

DECISION

## 1. Admission of Evidence

Fellows argues that the trial court abused its discretion by admitting evidence during the jury trial. Specifically, he contends that the trial court abused its discretion by admitting Officer Arbaugh's testimony regarding his statement made to the officer during booking. Fellows argues on appeal, as he did at trial, that testimony regarding his statement should not have been admitted at trial because the State did not disclose that it

7

intended to introduce evidence of Fellows's booking statement until two days before trial, which he alleges constituted a discovery violation.

The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). In regard to discovery matters, a trial court "must be given wide discretionary latitude in discovery matters since it has the duty to promote the discovery of truth and to guide and control the proceedings, and will be granted deference in assessing what constitutes substantial compliance with discovery orders." *Cliver v. State*, 666 N.E.2d 59, 64 (Ind. 1996) (quoting *Vanway v. State*, 541 N.E.2d 523, 527 (Ind. 1989)), *reh'g denied*. We will not reverse a trial court's rulings regarding discovery violations and sanctions "[a]bsent clear error and resulting prejudice." *Id.* "Generally, the proper remedy for a discovery violation is a continuance." *Berry v. State*, 715 N.E.2d 864, 866 (Ind. 1999). "Where a continuance is an appropriate remedy, a defendant will waive any alleged error regarding noncompliance with the trial court's discovery order by failing to request a continuance." *Lindsey v. State*, 877 N.E.2d 190, 196 (Ind. Ct. App. 2007), *trans. denied*. "Where the State's actions were deliberate and the conduct prevented a fair trial, a more extreme remedial measure—exclusion of evidence—may be employed." *Id.* (citing *Berry*, 715 N.E.2d at 866).

Here, Fellows filed a motion in limine seeking to exclude Officer Arbaugh's testimony and objected to his testimony at trial, but he did not request a continuance. Accordingly, he has waived appellate review of any alleged discovery violation

argument. *See, e.g.*, *Warren v. State*, 725 N.E.2d 828, 832 (Ind. 2000) (noting that the proper remedy for a discovery violation is usually a continuance and that the failure to alternatively request a continuance when seeking to exclude evidence constitutes a waiver of any alleged error).

Waiver notwithstanding, the trial court did not abuse its discretion by admitting the officer's testimony regarding Fellows's statement. Fellows does not argue that his statement was inadmissible pursuant to the rules of evidence or pursuant to any constitutional or statutory prohibition. Other than generally asserting that the trial court should have excluded Officer Arbaugh's testimony as a sanction for an alleged discovery violation, Fellows provides no citation to authority to support his assertion and makes no cogent argument showing that the State's actions constituted a deliberate violation of discovery or showing that its conduct prevented him from receiving a fair trial. As a result, he has failed to show that the trial court should have excluded the officer's testimony. *See Berry*, 715 N.E.2d at 866 (explaining that "[e]xclusion of the evidence is an extreme remedy and is to be used only if the State's actions were deliberate and the conduct prevented a fair trial").

Based on the record before us, we conclude that the trial court did not abuse its discretion by admitting into evidence Officer Arbaugh's testimony regarding Fellows's unsolicited statement despite the State's failure to disclose the officer's proposed testimony until two days before trial. *See, e.g.*, *Booker v. State*, 903 N.E.2d 502, 505-06 (Ind. Ct. App. 2009) (explaining that the State has no affirmative duty to provide inculpatory evidence and holding that the State's failure to disclose oral statement

9

allegedly made by defendant to a police officer did not constitute a discovery violation), *trans. denied*; *Lindsey*, 877 N.E.2d at 196 (holding that exclusion of evidence was not an appropriate remedy for the State's discovery violation).

2. Sufficiency

Fellows challenges the sufficiency of the evidence on two of his four convictions. Specifically, Fellows argues that the evidence was insufficient to support his convictions for Class A felony burglary resulting in bodily injury (Count 1) and Class B felony attempted robbery resulting in bodily injury (Count 3).

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the [jury's verdict]. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt . . . The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original). The testimony of a single eyewitness to a crime is sufficient to sustain a conviction. *Green v. State*, 756 N.E.2d 496, 497 (Ind. 2001). *See also Thomas v. State*, 441 N.E.2d 441, 442 (Ind. 1982) ("A conviction may be sustained by the uncorroborated testimony of a single eyewitness.").

To sustain Fellows's conviction for Class A felony burglary resulting in bodily injury as charged, the State was required to prove beyond a reasonable doubt that Fellows broke and entered the building occupied by Williams with the intent to commit the felony

10

of theft and that such act resulted in bodily injury to Williams. *See* I.C. § 35-43-2-1(2). Additionally, to sustain Fellows's conviction for Class B felony attempted robbery resulting in bodily injury as charged, the State was required to prove beyond a reasonable doubt that Fellows attempted to commit the crime of robbery by "knowingly punching and kicking the victim, to-wit: Dawn Linberg, multiple times, demanding money from [Linberg], and grabbing [Linberg's] clothing looking for money, resulting in bodily injury to Dawn Linberg, which conduct constituted a substantial step toward the commission of said crime of Robbery . . . ." (App. 51). *See also* I.C. §§ 35-42-5-1; 35-41-5-1.

Fellows contends that the evidence identifying him as the perpetrator of the crimes of burglary and attempted robbery was insufficient. However, his argument on appeal—suggesting that Linberg's pre-trial identification was unduly suggestive—is an argument that goes to the admissibility of the evidence. *See generally Hale v. State*, 976 N.E.2d 119, 123 (Ind. Ct. App. 2012). Fellows, however, is *not* arguing that this identification evidence was inadmissible. Indeed, Fellows could not make such an argument on appeal as he did not object to the admission of the pre-trial or the in-court identification testimony at trial. Instead, his argument is directed at the weight of the evidence and amounts to nothing more than a request to reweigh this identification evidence, which we cannot and will not do. *See Drane*, 867 N.E.2d at 146.

Here, the evidence before us reveals that Williams and Linberg saw Fellows as he broke into their house and hit them both multiple times. Linberg gave a physical description of Fellows to the 911 dispatcher and to police when they arrived on the scene.

11

Police officers, with the help of a police dog, tracked Fellows's scent from the house and apprehended him within blocks of the house. As police had Fellows in custody, Linberg, immediately and without hesitation, identified Fellows as the perpetrator of the crimes at issue. Additionally, both Linberg and Williams identified Fellows in-court as the person who broke into their house, repeatedly hit them, took money from Williams, and said he was going to take everything in their house. Because there was probative evidence from which the jury could have found that Fellows was the perpetrator of the burglary and attempted robbery, we affirm his convictions for these two crimes. *See, e.g.*, *Thomas*, 441 N.E.2d at 442 (holding that the identification testimony sufficiently supported the defendant's conviction of robbery); *Lewis v. State*, 383 N.E.2d 65, 66 (Ind. 1978) (holding that the victims' pre-trial identifications and in-court identifications were "substantial evidence of probative value on the issue of identification" and affirming the defendant's conviction for robbery); *Gorman v. State*, 968 N.E.2d 845, 848 (Ind. Ct. App. 2012) (holding that the victim's in-court testimony that she was one hundred percent positive of her identification of the defendant as the perpetrator of the robbery was sufficient to support the defendant's robbery conviction), *trans. denied*.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.