**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 21 2014, 10:03 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SEAN M. ROW**
GALYEN & ROW LAW OFFICE
New Castle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KURNIE NICKSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1307-CR-658 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Thomas Newman, Jr., Judge
Cause No. 48C03-1212-FC-2296

**August 21, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

Following a jury trial, Kurnie Nickson was convicted of two counts of battery, one as a Class C felony for being committed by means of a deadly weapon, and one as a Class A misdemeanor for resulting in serious bodily injury. The trial court ordered that Nickson serve an aggregate sentence of eight years at the Indiana Department of Correction. Nickson now appeals his conviction, questioning whether the trial court abused its discretion in the admission of certain evidence, and also appeals his sentence, contending it is inappropriate in light of the nature of his offenses and of his character. Concluding the trial court did not abuse its discretion in the admission of evidence but that Nickson's sentence is inappropriate, we affirm in part, reverse in part and remand.

## Facts and Procedural History

Nickson and Misty Nickson were married for six years and had two children together. By December 2012, they were divorced, and Misty was living in Anderson with the couples' children and her fiancé, Louis Edward Townsend. Nickson lived in Indianapolis. In the early afternoon of December 8, 2012, Nickson texted Misty to ask a banking-related question. Misty responded to the initial text, but because she was driving, handed her phone to Townsend to respond to later texts. The conversation between the two men turned contentious, profane, and threatening. Later that evening, Misty resumed texting with Nickson to try to calm the situation, but at approximately 8:00 p.m., Nickson texted that he was coming to Anderson. Misty and the children were running an errand at that time and Townsend was out picking up his cousin. When Misty and the children returned home around 9:00 p.m., Nickson was there with two friends

who he had brought with him because he thought there might be a fight. Misty asked him to leave, but he refused. When Townsend arrived a short time later with his cousin, he too asked Nickson to leave and the two exchanged words. Nickson took a baseball bat from his car and began beating Townsend with it. Nickson continued to hit Townsend after he fell to the ground. When Misty tried to cover and protect Townsend's head with her body, Nickson hit her with the bat. Eventually, Townsend was able to grab the bat away from Nickson and Nickson fled from the scene. Townsend's cousin picked up the bat and hit Nickson's car to try to stop him from leaving but was unsuccessful. Townsend was taken to the local hospital and ultimately transported by helicopter to St. Vincent Hospital in Indianapolis due to the severity of his injuries, including a head injury and multiple fractures. Officers were unable to recover the bat used in the incident.

The State charged Nickson with battery against Townsend as a Class C felony for using a deadly weapon and battery against Misty as a Class A misdemeanor for causing bodily injury. At Nickson's jury trial, the trial court admitted into evidence over Nickson's objection pictures of Misty's phone showing the text messages with Nickson from that day as well as a transcript of the texts. Misty testified that she had deleted one of the texts Townsend sent Nickson from her phone, but stated the deleted message was not threatening, it just told Nickson he could come to Anderson and talk. The trial court also admitted into evidence over Nickson's objection a baseball bat purported to be similar to the one Nickson used in the attack. Nickson testified that he did not bring a baseball bat to Anderson with him; rather, Townsend's cousin had the baseball bat and

used it to bust Nickson's car windows at the start of the altercation. Nickson heard one of his acquaintances say, "[h]e got a gun," transcript at 417, saw Townsend walking toward him with a gun, picked up the baseball bat, and struck Townsend with it. No gun was recovered from the scene, and Townsend did not own and was not known to carry a gun. The jury found Nickson guilty as charged. Nickson was sentenced to a term of eight years executed for the Class C felony conviction and a concurrent term of one year for the Class A misdemeanor conviction. Nickson now appeals his convictions and sentence.

<u>Discussion and Decision</u>

## I. Admission of Evidence

Nickson first contends the trial court erred in admitting into evidence the text messages and the baseball bat.

## A. Standard of Review

A trial court has broad discretion in ruling on the admissibility of evidence. <u>Hoglund v. State</u>, 962 N.E.2d 1230, 1237 (Ind. 2012). We will disturb the trial court's ruling only for an abuse of discretion. <u>Id.</u> An abuse of discretion is shown when the trial court's ruling is clearly against the facts and circumstances before it. <u>Id.</u>

Errors in the admission of evidence are generally disregarded unless they affect a party's substantial rights. <u>Id.</u> at 1238. To determine the effect of an evidentiary ruling on a defendant's substantial rights, we look at the probable impact on the fact finder. <u>Id.</u> If the conviction was supported by substantial independent evidence of guilt and we are satisfied there is no substantial likelihood the challenged evidence contributed to the conviction, the erroneous admission is harmless error. <u>Id.</u>

4

## B. Text Messages

Nickson alleges the trial court abused its discretion in admitting the pictures of Misty's phone (exhibit 33) and the transcript of the text messages (exhibit 4) they exchanged before the incident over his objection that the exhibits were incomplete because Misty testified she had deleted one of the texts.

Indiana Evidence Rule 106 embodies the "completeness doctrine":

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require at that time the introduction of any other part or any other writing or recorded statement which in fairness ought to be considered contemporaneously with it.

(2012.) The common law doctrine of completeness applies not only to writings but oral conversations as well. Lewis v. State, 754 N.E.2d 603, 606-07 (Ind. Ct. App. 2001), trans. denied; see also DesJardins v. State, 759 N.E.2d 1036, 1038 (Ind. 2001) ("We conclude that any mode of conveying information . . . falls within the scope of Indiana Rule of Evidence 106 and the doctrine of completeness . . . ."). In either iteration, the doctrine is designed to "avoid misleading impressions caused by taking a statement out of its proper context or otherwise conveying a distorted picture by the introduction of only selective parts . . . ." Barnett v. State, 916 N.E.2d 280, 286 (Ind. Ct. App. 2009), trans. denied. When one party seeks to admit a portion of a statement into evidence, the opposing party can place the remainder of the statement into evidence. Donaldson v. State, 904 N.E.2d 294, 300-01 (Ind. Ct. App. 2009).

Whether the text messages are a "writing or recorded statement" per the evidence rule or a memorialization of a conversation per the common law rule, the doctrine of

completeness does not compel their exclusion. The doctrine is intended to allow the introduction of additional material to place incomplete, misleading evidence in context, not to exclude the original evidence. See In re Paternity of B.B., 1 N.E.3d 151, 158-59 (Ind. Ct. App. 2013) (noting doctrine of completeness did not compel exclusion of entire text message exchange which Father claimed was incomplete). As a party to the text messages, Nickson had access to the texts just as the State did, and could have obtained a copy of the entire text exchange. He was at liberty to admit the deleted text if he thought it necessary to promote his defense. Moreover, Misty testified to the content of the deleted text, and both Townsend and Nickson testified to the tenor and content of the text conversation, so the texts were placed in context for the jury. For these reasons, we cannot say the trial court abused its discretion when it admitted State's exhibits 33 and 34.

### C. Baseball Bat

Nickson also contends the trial court abused its discretion in admitting as a demonstrative piece of evidence a bat that was described by the State as "substantially similar to the bat that was used to attack the victims." Tr. at 301. He argues that the probative value of the exhibit is outweighed by the danger of unfair prejudice.

"Demonstrative evidence is evidence offered for purposes of illustration and clarification." Diaz v. State, 934 N.E.2d 1089, 1094 (Ind. 2010) (citation omitted). In order to be admissible, "the evidence need only be sufficiently explanatory or illustrative of relevant testimony to be of potential help to the trier of fact." Wise v. State, 719 N.E.2d 1192, 1196 (Ind. 1999). Like all evidence, the admissibility of demonstrative

evidence is also subject to Evidence Rule 403's requirement of balancing the probative value of evidence versus the danger of unfair prejudice. Dunlap v. State, 761 N.E.2d 837, 842 (Ind. 2002); see Ind. Evidence Rule 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . .") (2012). Evaluating whether an exhibit's probative value is substantially outweighed by the danger of unfair prejudice is a discretionary decision best left to the trial court. Helsley v. State, 809 N.E.2d 292, 296 (Ind. 2004).

In Dunlap, the defendant was charged with murder for the shooting death of an acquaintance. The murder weapon was never found, but the State offered into evidence an assault rifle similar to the alleged murder weapon as a demonstrative exhibit during the testimony of a tool marks and firearm examiner. Because the defendant claimed the discharge of the weapon was accidental and therefore she had not knowingly killed the victim, the court agreed with the State that the demonstrative evidence had significant probative value for showing how such a weapon works. 761 N.E.2d at 842. And because the trial court admonished the jury that no weapon had been found and the weapon that would be displayed was going to be used only to demonstrate what a similar-type weapon could look like, the danger that the exhibit could mislead the jury was low. Id.

Most, if not all, members of Nickson's jury were probably familiar with a baseball bat, what it looks like, how it is used, and the damage it could cause. Therefore, the probative value of the demonstrative exhibit was low. However, because Nickson testified and admitted that he hit Townsend with a baseball bat, the prejudicial effect was

also low, even in the absence of an admonition or instruction from the trial court regarding the demonstrative nature of the exhibit. The evidence was clear that the actual bat used in the commission of the crime had not been found, and when using the demonstrative exhibit during questioning, the State clearly asked if it was <u>similar</u> to the bat Nickson used rather than implying it was <u>the</u> bat. The prejudice we are concerned with in this setting is unfair prejudice. <u>Williams v. State</u>, 891 N.E.2d 621, 630 (Ind. Ct. App. 2008). "'Unfair prejudice' addresses the way in which a jury is expected to respond to the evidence." <u>Id.</u> That Nickson beat Townsend and Misty with a baseball bat is not disputed. The central question for the jury was whether Nickson wielded the baseball bat because he believed Townsend had a gun or whether he wielded the baseball bat against an unarmed man. The admission of a similar baseball bat was not likely to persuade the jury one way or the other with respect to Nickson's guilt. Therefore, any prejudicial effect from its admission did not <u>substantially</u> outweigh its probative value and the trial court did not abuse its discretion in admitting the exhibit. <u>See</u> <u>Berry v. State</u>, 715 N.E.2d 864, 867 (Ind. 1999) (holding probative value of shotgun introduced as a demonstrative exhibit was low because defendant admitted owning a similar shotgun and the offense was committed with a shotgun, but the prejudicial effect was also low because trial court instructed jury that exhibit was to be considered only as a demonstrative exhibit, so the danger of prejudice did not substantially outweigh the exhibit's probative value).

## II.  Inappropriate Sentence[1]

Nickson also contends his eight-year sentence is inappropriate in light of the nature of his offenses and his character.

### A.  Standard of Review

This court has authority to revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  Ind. Appellate Rule 7(B).  In assessing the nature of the offense and character of the offender, we may look to any factors appearing in the record.  Stetler v. State, 972 N.E.2d 404, 408 (Ind. Ct. App. 2012), trans. denied. The burden is on the defendant to persuade us that his sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

### B.  Nickson's Sentence

In considering the nature of the offense, the advisory sentence is the starting point the legislature has selected as appropriate for the crime committed.  Fuller v. State, 9 N.E.3d 653, 657 (Ind. 2014).  The character of the offender portion of sentence review involves consideration of the aggravating and mitigating circumstances and other general considerations.  Clara v. State, 899 N.E.2d 733, 736 (Ind. Ct. App. 2009).  We are not

---

[1] Whether the trial court abused its discretion in imposing the sentence it did and whether in our judgment, the sentence imposed was inappropriate are two separate issues.  See King v. State, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008).  Nickson conflates the two arguments, stating his issue as whether his sentence is inappropriate and asking that this court revise it, but also referencing the trial court's obligation to enter a sentencing statement identifying the trial court's reasons for imposing a particular sentence.  See Appellant's Amended Brief at 11 (citing Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007)).  With regard to the latter, we note only that the trial court's statements at the sentencing hearing and its original sentencing order—amended on remand at the State's request— both identify the mitigating and aggravating circumstances on which the trial court relied in imposing sentence.  See Gleason v. State, 965 N.E.2d 702, 710 (Ind. Ct. App. 2012) ("When reviewing the sufficiency of the sentencing statement, we examine both the trial court's written and oral statements.").  Because we are not required to rely only on the circumstances cited by the trial court in conducting an inappropriateness review, we do not address whether the trial court abused its discretion with regard to its amended sentencing order.

limited to the aggravating and mitigating circumstances found by the trial court in analyzing a Rule 7(B) claim. Fuller, 9 N.E.3d at 657.

Nickson was sentenced to eight years for his Class C felony conviction, to be served concurrently with one year for the Class A misdemeanor conviction.[2] "A person who commits a Class C felony shall be imprisoned for a fixed term of between two (2) and eight (8) years, with the advisory sentence being four (4) years." Ind. Code § 35-50-2-6 (2013). Thus his sentence was the maximum sentence he could be ordered to serve in the absence of consecutive sentences. In committing these batteries, Nickson did not suddenly encounter a situation that escalated out of control. Rather, the conversations between Nickson and the victims occurred over approximately six hours, and Nickson traveled from Indianapolis to Anderson to confront them, even warning them that he was on his way. He had plenty of time to reflect upon his actions and choose a different course. However, it is of some concern that it was not until Townsend took over the text messaging that the tone of the conversation began to turn ugly. The altercation took place in front of Misty's and Nickson's children, which was known to Nickson. The injury Nickson caused to Townsend in particular was severe, but that was in part accounted for when the State elevated the basic battery charge to a Class C felony for use of a deadly weapon. On the whole, the nature of the offense is not appreciably greater than that contemplated by the legislature in setting the advisory sentence for Class C felony battery.

---

[2] "Ultimately the length of the aggregate sentence and how it is to be served are the issues that matter." Cardwell v. State, 895 N.E.2d 1219, 1224 (Ind. 2008). "[A]ppellate review should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of sentence on any individual count." Id. at 1225. Accordingly, we focus on the eight-year total sentence.

As for Nickson's character, he has no prior juvenile adjudications or adult convictions. He has, however, been arrested twice before for battery offenses. See Johnson v. State, 837 N.E.2d 209, 218 (Ind. Ct. App. 2005) ("When evaluating the character of an offender, a . . . court may consider the offender's arrest record in addition to actual convictions."), trans. denied. In early 2004, he was arrested on three counts of battery and one count of interference with reporting a crime, but all charges were dismissed. In late 2004, he was arrested for domestic battery against Misty, but the charge was dismissed upon proof that he had completed an anger control program. Although these charges are distant in time from the instant offense, they are extremely similar to the instant offense in nature and gravity, see Richardson v. State, 906 N.E.2d 241, 248 (Ind. Ct. App. 2009) (noting the significance of criminal history depends on the number and gravity of prior offenses and their proximity or distance and similarity or dissimilarity to the present offense), and they confirm that Nickson has a difficult time controlling his temper. The pre-sentence investigation report shows that Nickson participated in college athletics, earned both an associate and a bachelor's degree, and has been regularly employed. Prior to incarceration, he was current on his child support obligation and was active in his children's lives. The maximum possible sentences are generally most appropriate for the worst offenders, Reid v. State, 876 N.E.2d 1114, 1116 (Ind. 2007), and although Nickson's actions in December 2012 were impetuous, unnecessary, and demonstrate a lack of judgment, his character overall does not indicate he is among the worst offenders.

After giving due consideration to the trial court's sentencing decision, and considering the nature of Nickson's offense and his character, we agree with the trial court that a sentence greater than the advisory is warranted. At the same time, we are unable to conclude that Nickson is among the worst offenders. We therefore exercise our constitutional authority to revise Nickson's eight-year executed sentence to six years executed with two years suspended to probation.

## Conclusion

The trial court did not abuse its discretion in admitting the text messages or baseball bat into evidence over Nickson's objection. Nickson has met his burden of persuading us that his eight-year executed sentence is inappropriate, and we remand to the trial court to revise his sentence to six years executed with two years suspended to probation.

Affirmed in part, reversed in part, and remanded.

RILEY, J., concurs.

BRADFORD, J., concurs in part and dissents in part with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

KURNIE N. NICKSON,      )
                                    )

    Appellant-Defendant,     )
                                    )

    vs.                         )     No. 48A02-1307-CR-658
                                    )

STATE OF INDIANA,       )
                                    )

    Appellee-Plaintiff.       )

**BRADFORD, Judge, concurring in part and dissenting in part**

While I agree with the majority on the disposition of the evidentiary questions, I write separately because I believe that Nickson's character and the nature of his crimes fully justify his eight-year sentence. The nature of Nickson's offenses was fairly heinous, and the State proved far more than necessary to support his convictions. Angered by a series of telephone text messages, Nickson drove from Indianapolis to Anderson to confront Townsend. By Nickson's own admission, he had approximately two hours to rethink his course of action but did not. Once locating Townsend, Nickson immediately pulled out a baseball bat and clubbed Townsend in the head, fracturing his skull and causing subarachnoid hemorrhaging. Nickson continued the beating after Townsend fell to the ground. All told, Nickson admitted to striking Townsend up to twenty times with

13

the bat, when one blow would have supported his Class C felony battery conviction. As the prosecutor noted during final argument, Nickson's conduct would easily have supported a charge of—and conviction for—attempted murder, which would have carried a minimum non-suspendable sentence of twenty years. When Misty attempted to intervene on Townsend's behalf, Nickson beat her on the back, face, and hand, the last of which he broke. Moreover, Nickson and Misty's two young children, whose presence was known to Nickson, watched as their biological father savagely beat their mother and surrogate father with a baseball bat. Townsend's injuries were considered severe enough that the first doctor to see him in Anderson had him airlifted to Indianapolis so that he could be seen by a trauma surgeon and a neurosurgeon. The heinous nature of Nickson's offenses alone justifies his eight-year sentence.

Despite his lack of criminal convictions, Nickson's character also supports his sentence. When one considers that Nickson's response to perceived insults delivered via text message was to beat Townsend with a baseball bat, despite having two hours to think better of it, the obvious conclusion is that Nickson has serious and unaddressed anger-control issues. Moreover, Nickson's criminal history is not entirely spotless, as he has been arrested three times previously, including twice for battery offenses. One of the prior arrests stemmed from an incident with Misty, and charges were dropped when Nickson completed an anger management class, which apparently did not take. In light of Nickson's character and the nature of his offenses, I would conclude that his eight-year sentence is appropriate. Consequently, I concur in part and respectfully dissent in part.